1

2                                                **E-Filed 10/4/05**

3

4

5

6

7                          NOT FOR CITATION

8            IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN JOSE DIVISION

11

12   CENTER FOR BIOLOGICAL DIVERSITY, et al.,    Case Number C 04-4736 JF

13                        Plaintiffs,            ORDER[1] ON PENDING MOTIONS

14            v.                                 [Docket No. 37, 58, 59, 74, 90]

15   BUREAU OF LAND MANAGEMENT, et al.,

16                        Defendants.

17

18

19

20                          **I. BACKGROUND**

21        Plaintiffs Center for Biological Diversity and California Native Plant Society ("CNPS")

22   filed a complaint on November 9, 2004, alleging two claims against Defendants Bureau of Land

23   Management ("BLM") and Mike Pool, State Director of the Bureau of Land Management for

24   California.  These claims are (1) that Defendants are violating the Endangered Species Act

25   ("ESA") by failing to reinitiate consultation, and (2) that Defendants are violating the ESA

26   because their management of the Clear Creek Management Area ("CCMA") jeopardizes the San

27   _____

28        [1] This disposition is not designated for publication and may not be cited.

1   Benito evening-primrose ("evening-primrose").  Plaintiffs allege that excessive off-highway

2   vehicle ("OHV") use jeopardizes the continued existence of the evening-primrose.

3         On March 28, 2005, Plaintiffs filed a motion for summary judgment.  On April 29, 2005,

4   Defendants filed a cross-motion for summary judgment.  On July 15, 2005, the Court issued an

5   order deferring ruling on the motions for summary judgment until after the United States Fish

6   and Wildlife Service ("FWS") issued an anticipated Biological Opinion.  On September 2, 2005,

7   FWS issued a Biological Opinion ("2005 BO") evaluating the effect of BLM's management of

8   CCMA on the evening-primrose.  Plaintiffs and Defendants subsequently have filed

9   supplemental briefs discussing the impact of the new 2005 BO on the pending motions for

10  summary judgment.

11        Plaintiffs submitted several declarations with their original moving papers, including the

12  declarations of Brian LeNeve ("LeNeve") and Emily Roberson ("Roberson").  On April 29,

13  2005, Defendants filed a motion to strike the LeNeve and Roberson declarations.  On May 25,

14  2005, Plaintiffs filed opposition to this motion.  LeNeve filed a supplemental declaration on May

15  25, 2005, following the conclusion of the 2005 "high season" at the CCMA.  On June 8, 2005,

16  Defendants filed a motion to strike LeNeve's supplemental declaration.  Plaintiffs have not filed

17  opposition to the second motion to strike.

18        On September 16, 2005, Plaintiffs filed a motion for leave to file a supplemental

19  complaint.  The proposed pleading asserts an additional claim against FWS, alleging that the

20  2005 BO is arbitrary, capricious, and unlawful.  Plaintiffs seek a declaratory judgment that the

21  2005 BO does not comply with the requirements of the ESA and an injunction requiring FWS to

22  issue a new Biological Opinion.  Defendants filed a response conceding that there are no legal

23  barriers to granting the instant motion, and stating that they "do not take a position on the

24  propriety of allowing Plaintiffs to file a supplemental complaint."

25

26                          **II. DISCUSSION**

27  **A. Motions to Strike Declarations of LeNeve and Roberson**

28        LeNeve is a member of the Monterey Bay Chapter of the CNPS and as of the date of the

2

1   declaration was vice president of that organization.  He declares that he has "been visiting the

2   CCMA for 12 years as an amateur botanist."  He has been part of a team responsible for

3   identifying potential evening-primrose sites, and he was a member of the CCMA Technical

4   Review Team from February 2002 to November 2003.  His declaration includes eye-witness

5   accounts of the use of OHVs in and the condition of the CCMA, accounts of his communications

6   with BLM, opinions and conclusions about the adequacy of BLM's management of the CCMA,

7   and photographs showing the impact of OHVs on the CCMA.  LeNeve's supplemental

8   declaration, filed after the conclusion of the 2005 "high season" at the CCMA, includes eye-

9   witness testimony as to the condition of the CCMA, accounts of OHV trespass and cut fences,

10   conditions of evening-primrose sites, opinions about BLM's monitoring compliance, and

11   additional photographs of the impact of OHVs on the CCMA.

12        Roberson is a member and employee of the Center for Biological Diversity.  She was the

13   Senior Policy Analyst for the CNPS for eleven years.  Her declaration includes eye-witness

14   accounts of the use of OHVs in and the condition of the CCMA, scientific descriptions of the

15   condition of the evening-primrose's habitat in the CCMA, opinions and conclusions about the

16   adequacy of BLM's management of the CCMA, and photographs showing the impact of OHVs

17   on the CCMA.

18        Defendants argue that because judicial review under the Administrative Procedure Act

19   (APA) is restricted to the administrative record, Plaintiffs should not be permitted to introduce

20   extrinsic evidence.  Plaintiffs respond that in cases of agency inaction, review is not limited to

21   the agency record.  The Court is of the opinion that, given the current posture of the case, the

22   APA does not restrict the scope of admissible evidence.

23        In *Washington Toxics Coalition v. Environmental Protection Agency*, the Ninth Circuit

24   held that the APA does not govern claims brought under the citizen suit provision of the

25   Endangered Species Act.  413 F.3d 1024, 1034 (9th Cir. 2005).  Intervenors in *Washington*

26   *Toxics* argued in district court that "the proceeding contravened APA standards because the

27   district court conducted its review outside an administrative record."  *Id*. at 1030.  The district

28   court held that the APA does not apply, and the Ninth Circuit upheld that decision:

3

1
2
3

> The district court correctly held, however, that the ESA citizen suit provision
> creates an express, adequate remedy. . . .  Because this substantive statute
> independently authorizes a private right of action, the APA does not govern the
> plaintiffs' claims. Plaintiffs' suits to compel agencies to comply with the substantive
> provisions of the ESA arise under the ESA citizen suit provision, and not the APA.

4   *Id*. at 1034.  Pursuant to this authority, the LeNeve and Roberson declarations are admissible.

5   Accordingly, the Court will deny Defendants' motions to strike.

6          Defendants have requested that if the Court denies the motions to strike, they be offered

7   an opportunity to conduct discovery, file opposing expert declarations, and file a supplemental

8   brief addressing the arguments that rely on these declarations.  At the hearing on October 3,

9   2005, Defendants indicated that they intend to file only counter-declarations and a supplemental

10  brief.

11  **B. Cross-motions for Summary Judgment on Plaintiffs' First Claim**

12         Plaintiffs' first claim is that Defendants must reinitiate consultation with FWS because

13  Defendants have failed to implement mitigation measures identified in the 1997 BO, that effects

14  of the current management of the CCMA that were not considered in the 1997 BO are adversely

15  affecting the evening-primrose, and that BLM's management has been modified such that it is

16  inconsistent with the 1997 BO and 1998 Record of Decision (ROD).  Since the complaint and

17  cross-motions for summary judgment were filed, BLM has reinitiated consultation with FWS.

18  The Fish and Wildlife Service issued a new Biological Opinion on September 2, 2005.  In light

19  of these developments, and in the absence of an actual case or controversy, the Court lacks

20  subject matter jurisdiction.

21         Although Defendants have not moved to dismiss Plaintiffs' first claim for lack of subject

22  matter jurisdiction, the Court may dismiss on this ground sua sponte.  *See, e.g.*, *Harmon v.*

23  *Superior Court*, 307 F.2d 796, 797 (9th Cir., 1962) ("The District Court always has power to

24  dismiss for lack of jurisdiction. It can do so at any time that such lack appears, and on its own

25  motion."); Fed. R. Civ. P. 12(h).  Accordingly, the Court will dismiss Plaintiffs' first claim for

26  lack of subject matter jurisdiction.

27  **C. Cross-motions for Summary Judgment on Plaintiffs' Second Claim**

28         Plaintiffs' second claim is that BLM is violating § 7(a)(2) of the ESA, 16 U.S.C. §

4

1536(a)(2), by failing "to ensure that its management of the CCMA is not likely to jeopardize the continued existence" of the evening-primrose.  They claim that BLM has placed the evening-primrose in jeopardy by failing to implement its own proposed protective measures.  Plaintiffs allege that these proposed protective measures were the basis for FWS's finding of "no jeopardy" for the evening-primrose.

Much of Plaintiffs' evidence that BLM has failed to implement the proposed protective measures is found in the declarations of LeNeve and Roberson.  As discussed above, Defendants have not yet responded substantively to these declarations.  The second claim thus is not yet ripe for determination.

**D. Motion for Leave to File a Supplemental Complaint**

Pursuant to Federal Rule of Civil Procedure 15(d), a party may file a supplemental pleading.  "Upon a motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."  Fed. R. Civ. P. 15(d).  District courts have broad discretion in deciding whether to permit supplemental pleadings.  *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir., 1988).  A party may bring "new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy."  *Id*.  Additional defendants may be introduced through supplemental complaints.  *Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218, 227 (1964) ("Rule 15(d) of the Federal Rules of Civil Procedure plainly permits supplemental amendments to cover events happening after suit, and it follows, of course, that persons participating in these new events may be added if necessary.").

Plaintiffs assert that the Court should grant their motion to file a supplemental complaint because the September 2, 2005 Biological Opinion was issued after the filing of their original complaint.  They suggest that the addition of their proposed new claim is appropriate because they "believe that BLM intends to rely on the new Biological Opinion to argue that it has met its obligations under Section 7(a)(2) of the federal Endangered Species Act, 16 U.S.C. § 1536(a)(2), which is at issue in the pending cross-motions."

5

1    Although Defendants do not take a position on Plaintiffs instant motion, they do respond

2    to the substance of the Plaintiffs' proposed additional claim.  First, Defendants argue that

3    Plaintiffs are incorrect in their assumption that Defendants will rely on the new Biological

4    Opinion.  Defendants suggest instead that BLM will not rely on the new Biological Opinion until

5    it completes the regulatory process, signs a Record of Decision, and subsequently implements the

6    proposed action reviewed in the new Biological Opinion.  Thus, Defendants do not respond

7    directly to the prediction by Plaintiffs that "BLM intends to rely on the new Biological Opinion

8    *to argue that it has met its obligations* under Section 7(a)(2) of the federal Endangered Species

9    Act" (emphasis added).  However, while BLM's actual management of CCMA may not be

10   immediately affected by the new Biological Opinion, Defendants *have* relied in both their

11   supplemental brief and their response to Plaintiffs' supplemental brief on the new Biological

12   Opinion to support their position that they are not violating the ESA.  For example, in their

13   response to Plaintiffs' supplemental brief, Defendants argue that they "have shown that

14   irreparable harm is not likely to occur pending BLM's issuance of ROD with concrete evidence,

15   *i.e.* the 2005 BO.  In the 2005 BO, FWS found that, in light of the current status of evening-

16   primrose and in light of BLM's current management of CCMA, BLM's future management, as

17   proposed for the next 15 years, is not likely to jeopardize evening-primrose."

18   Second, Defendants point out that this Court presently lacks jurisdiction to review

19   Plaintiffs' proposed additional claim because Plaintiffs have not met the sixty-day notice

20   requirement of the citizen suit provision of the ESA.  16 U.S.C. § 1540(g)(2)(A) ("No action may

21   be commenced . . . prior to sixty days after written notice of the violation has been given to the

22   Secretary, and to any alleged violator of any such provision or regulation.").  Plaintiffs have not

23   offered their view of this potential jurisdictional problem.

24   Plaintiffs' proposed additional claim, based on facts arising since the initial complaint

25   was filed, appears to be related to Plaintiffs' second claim.  Accordingly, the Court will grant

26   Plaintiffs' motion for leave to file a supplemental complaint, and the proposed pleading is

27   deemed filed as of the date of this order.  This ruling is without prejudice to Defendants'

28   potential jurisdictional argument.

6

**E. Interim Relief**

Defendants have closed portions of the CCMA through October 15, 2005.  The Court is inclined to issue an order to prevent interim harm in the form of a limited injunction requiring that Defendants implement the protective measures identified by FWS in the 1997 BO for the period from October 15, 2005 through February, 2006, when a Record of Decision based upon the 2005 BO is expected to issue.  The Court would prefer strongly, however, that the parties reach agreement as to the precise nature of any interim relief.  Accordingly, the Court will defer issuance of any injunctive order until October 15, 2005.  If the parties are unable to reach agreement among themselves, the Court encourages the parties to meet with Magistrate Judge Seeborg for the purpose of mediating their differences.

**IV. ORDER**

Good cause therefore appearing, IT IS HEREBY ORDERED that Defendants' motions to strike the LeNeve and Roberson declarations are DENIED.  Defendants may file a substantive response to the declarations, including their own counter-declarations, on or before October 24, 2005.

IT IS FURTHER ORDERED that Plaintiffs' first claim is dismissed as moot.

IT IS FURTHER ORDERED that Plaintiffs' motion for leave to file a supplemental complaint is GRANTED.  Defendants shall file a responsive pleading on or before October 24, 2005.

IT IS FURTHER ORDERED that the Court shall defer issuance of any injunctive order until October 15, 2005, pending discussions among the parties.

DATED: October 4, 2005

/s/ electronic signature authorized
JEREMY FOGEL
United States District Judge

7

1    This Order has been served upon the following persons:

2    Michael Richard Eitel      michael.eitel@usdoj.gov, wanda.davis@usdoj.gov

3    Michael W. Graf      mwgraf@aol.com,

4    Brian Litmans      litmans@worldnet.att.net

5    Paul Andrew Turcke      pat@msbtlaw.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 04-4736 JF
ORDER ON PENDING MOTIONS
(JFLC1)