**E-Filed 10/28/05**

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BUREAU OF LAND MANAGEMENT, et al., <br><br> Defendants. | Case Number C 04-04736 JF <br><br> ORDER[1] RE INTERIM RELIEF |

Plaintiffs Center for Biological Diversity and California Native Plant Society filed the above-entitled action on November 9, 2004, alleging two claims for relief against Defendants Bureau of Land Management ("BLM") and Mike Pool, State Director of the Bureau of Land Management for California. As framed originally, these claims were (1) that Defendants are violating the Endangered Species Act ("ESA") by failing to reinitiate consultation, and (2) that Defendants are violating the ESA because their management of the Clear Creek Management Area ("CCMA") jeopardizes the San Benito evening-primrose ("evening-primrose"). Plaintiffs

---

[1] This disposition is not designated for publication and may not be cited.

alleged that excessive off-highway vehicle ("OHV") use within the CCMA jeopardizes the continued existence of the evening-primrose. Plaintiffs requested specifically that the Court grant injunctive relief precluding the use of the CCMA by OHVs until Defendants consult with the United States Fish and Wildlife Service ("FWS"), and, until the completion of such consultation, precluding OHV use "to the extent that such activities are causing, or will cause, irreversible or irretrievable commitments of resources that would have the effect of 'foreclosing the formulation or implementation of any reasonable and prudent alternative measures.'"

Defendants subsequently initiated consultation, rendering both Plaintiffs' first claim for relief and the first aspect of Plaintiff's request for injunctive relief moot. However, Plaintiffs' request for injunctive relief through the completion of consultation, which the Court construes as a request for injunctive relief pending BLM's actual implementation of any measures recommended as a result of its consultation with FWS, remains pending. The Court's present consideration of interim relief is based on this outstanding request; it has not been undertaken *sua sponte* as suggested by Defendants. Defendants have been on notice of Plaintiffs' request for injunctive relief since Plaintiffs filed their original complaint and have been aware of this Court's intention to consider interim relief since October 3, 2005, the hearing date of the parties' cross-motions for summary judgment. The Court has offered all parties ample opportunity to brief the relevant legal and factual issues, and has deferred ruling until now in order to permit the parties to attempt to reach a voluntary interim agreement pending the completion of the current administrative process.

On March 28, 2005, Plaintiffs filed a motion for summary judgment. On April 29, 2005, Defendants filed a cross-motion for summary judgment. On July 15, 2005, the Court issued an order stating that it *briefly* would defer ruling on the motions for summary judgment until after the FWS issued an anticipated Biological Opinion ("BO") evaluating the effect of BLM's management of CCMA on the San Benito Evening-Primrose ("evening-primrose"). In deciding to defer its determination of these motions, the Court relied upon the fact that the CCMA would be closed until October 15, 2005, and that interim relief pending the issuance of the anticipated BO thus was unnecessary.

The instant case has continued to evolve in such a way that the Court is still not in a position to make a final determination of Plaintiffs' claims. On September 2, 2005, FWS issued the anticipated Biological Opinion ("2005 BO"). Plaintiffs and Defendants subsequently filed supplemental briefs discussing the impact of the 2005 BO on the pending motions for summary judgment. On September 16, 2005, Plaintiffs filed a motion for leave to file a supplemental complaint raising certain objections to the 2005 BO. On October 4, 2005, the Court issued an order dismissing Plaintiffs' first claim as moot, deferring determination of Plaintiffs' second claim because the claim is not yet ripe, and granting Plaintiffs' motion for leave to file a supplemental complaint. The Court has recently received complete briefing from the parties in response to the Court's admission of certain declarations to which Defendants objected. The Court nevertheless has continued to defer determination of Plaintiffs' second claim because of Defendants representation that the 2005 BO will not actually be implemented earlier than February, 2006. Plaintiffs have supplemented their complaint to include a claim against the FWS challenging the 2005 BO as arbitrary and capricious. The Court's determination of Plaintiffs' second claim may, at least in part, turn on its assessment of the validity of the 2005 BO. Given the long pendency of Plaintiffs' request for injunctive relief and the Court's concern that the habitat of the evening-primrose not suffer unnecessary damage during the remaining duration of the administrative process, the Court concludes that limited interim relief is appropriate.

As a preliminary matter, the Court must address Defendants' response to the Court's decision to admit the declarations submitted by the Plaintiffs. Defendants correctly point out that "[j]udicial review of administrative decisions under the ESA is governed by Section 706 of the Administrative Procedure Act." *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 973 (9th Cir. 2003). However, claims brought under the citizen-suit provision of the ESA may arise not only under the Administrative Procedure Act ("APA"), but also independently under the ESA. *See Washington Toxics Coalition v. Environmental Protection Agency*, 413 F.3d 1024, 1034 (9th Cir. 2005). The Court agrees with Defendants that it must apply the APA to any BLM actions that constitute agency decisions. However, to the extent that the challenged BLM actions were not based on agency decisions, but instead were

done without reliance on or in contradiction to an agency decision, the Court is not restricted by the APA. The Court thus may consider the declarations submitted by the Plaintiffs for the purpose of reviewing such alleged actions; it cannot and will not consider them for the purpose of reviewing decisions made by the agency. Defendants also object to the declarations on the ground that they inappropriately provide expert opinions and conclusions. The Court need not rule on this objection at this time because, to the extent that it has considered these declarations in connection with its consideration of interim relief, the Court has considered only statements that do not constitute opinions.

The traditional standard for granting a preliminary injunction is that the party seeking the injunction must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in the movant's favor. *See, e.g., Roe v. Anderson*, 134 F.3d 1400, 1401-02 (9th Cir. 1998); *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984). These formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. *See Roe*, 134 F.3d at 1402. However, in ESA cases, the standard is somewhat different. The "balance of hardships and the public interest tips heavily in favor of protected species," though it remains necessary that the plaintiff "make a showing that a violation of the ESA is at least likely in the future." *Nat'l Wildlife Fed'n v. Burlington Northern R.R., Inc.*, 23 F.3d 1508, 1511 (9th Cir. 1994).

Both parties' arguments accept the "no jeopardy" conclusion of the 1997 BO. However, Plaintiffs argue that BLM's management has differed from that outlined in the 1997 BO in such ways that the "no jeopardy" conclusion is no longer valid. Defendants acknowledge that they have modified their management, but assert that the BLM has considered each modification and consulted with the FWS in order to insure that its actions continue to support the validity of the 1997 BO's "no jeopardy" conclusion. The Court need not resolve this dispute at the present time. Rather, pending determination of the parties' cross-motions for summary judgment, the Court simply will require BLM to comply with the management procedures outlined in the 1997 BO to the extent that BLM's management procedures have not been otherwise modified

following appropriate agency decision-making and FWS-consultation. Presuming that Defendants' statement that the only modifications to BLM's management of the CCMA have been based on thoughtful agency decision-making and have been approved in consultation with the FWS is accurate, this order requires Defendants to do nothing that they are not already doing. In balancing the hardships, there is very little, if any, hardship placed on the Defendants. Thus, a low bar is set for the Plaintiffs' required demonstration of a likelihood of irreparable harm. It is sufficient that Plaintiffs have presented evidence tending to show that the Defendants may not be following the management plan outlined in the 1997 BO.

This interim order will be in effect until a Record of Decision based upon the 2005 BO issues, which is expected to be in February, 2006. Counsel shall appear for further argument on the pending motions on February 24, 2006, at 9:00am.

IT IS SO ORDERED.

DATED: October 28, 2005

/s/ electronic signature authorized
JEREMY FOGEL
United States District Judge

Copies of Order served on:

| | |
|---|---|
| Michael Richard Eitel | michael.eitel@usdoj.gov, wanda.davis@usdoj.gov |
| Michael W. Graf | mwgraf@aol.com, |
| Brian Litmans | litmans@worldnet.att.net |
| Paul Andrew Turcke | pat@msbtlaw.com |

Case No. C 04-04736 JF
ORDER RE INTERIM RELIEF
(JFLC1)